# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# NORTHERN DIVISION

| | | |
|---|---|---|
| SHANNON K. HOLOHAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:17-cv-00053-AGF |
| | ) | |
| NANCY A. BERRYHILL, Deputy | ) | |
| Commissioner for Operations, Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Shannon K. Holohan was not disabled, and thus not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. For the reasons set forth below, the decision of the Commissioner will be reversed and the case remanded for further proceedings.

## BACKGROUND

**Agency Records, Medical Records, Evidentiary Hearing, and ALJ's Decision**

The Court adopts the statement of facts set forth in Plaintiff's Statement of Uncontroverted Facts (ECF No. 11-1), as amended by Defendant to clarify the page number for a transcript cite and the date of one medical record (ECF No. 16-1); as well as Defendant's Statement of Additional Facts (ECF No. 16-2), which Plaintiff has not opposed. Together, these statements provide a fair description of the record before the

Court. Specific facts will be discussed as needed to address the parties' arguments.

Plaintiff, who was born on September 13, 1967, filed his application for benefits on December 30, 2013, alleging disability beginning April 1, 2013, due to rheumatoid arthritis, major depressive disorder, pain, swelling in the knees and ankles, seizures and pseudo seizures, anxiety, and fatigue. On March 11, 2014, Plaintiff's application was denied at the initial administrative level, and he thereafter requested a hearing before an Administrative Law Judge ("ALJ").

A hearing was held on January 15, 2016, at which Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified. By decision dated May 9, 2016, the ALJ determined that Plaintiff had the severe impairments of rheumatoid arthritis, ankylosing spondylitis, inflammatory bowel disease, history of myasthenia gravis, history of knee and shoulder surgeries, depression, and anxiety. The ALJ further determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary unskilled work, as defined by the Commissioner's regulations, except that Plaintiff was further limited as follows:

> [H]e must be able to alternate sitting and standing every 30 minutes but would not be off-task. [He] is limited to only occasional stooping and climbing ramps and stairs, and he cannot engage in kneeling, crouching, crawling, or climbing ladders, ropes, or scaffolds. [He] must avoid exposure to extreme heat, cold, and humidity and he is limited to performing simple, routine tasks not at a fast pace such as would be required on an assembly line. He can have only occasional changes in the work setting and can only occasionally interact with the public and coworkers.

Tr. 18.

In formulating this RFC, the ALJ discounted Plaintiff's testimony regarding his

2

disabling symptoms. The ALJ noted that Plaintiff had a good work history as a sales representative at a seed company prior to the alleged onset date of disability, and that he was terminated because, as a result of his impairments, he could not perform his duties involving lifting 60 pounds and interacting with customers. The ALJ then stated:

> [A]lthough this is a factor that bolsters the persuasiveness of [Plaintiff's] allegations, other factors prove more weighty. For example, [Plaintiff] reported to his treating physician on April 25, 2013, that while he stopped working as a seed salesman, he continued to work his cattle farm. Work performed during any period in which the claimant alleges disability, even when that work activity is not substantial gainful employment, demonstrate[s] a level of vigor, stamina, cognitive functioning, and emotional stability inconsistent with the allegation of disability.

Tr. 20. The ALJ also stated that Plaintiff's daily activities were inconsistent with his allegations of disabling limitations, including Plaintiff's self-described ability on "good days" to take care of his personal care tasks, see his children off to school, and run errands such as shopping.

Finally, the ALJ gave partial weight to the opinion of Plaintiff's treating primary care physician, Michael Daly, D.O., and little weight to the opinion of Plaintiff's treating psychiatrist, Suzanne King, M.D. The ALJ gave no weight to the opinions of both of these treating providers that Plaintiff would likely be off task 20% (according to Dr. Daly) or 25% (according to Dr. King) of the workday and would miss more than four days of work per month due to his physical and mental symptoms. As to Dr. King's opinion, the ALJ reasoned that "Dr. King initially checked off 'mild' then changed to 'moderate' [regarding Plaintiff's ability to interact with the public, supervisors, and coworkers,] as

3

well as initially checked off 'moderate' and changed to 'marked' [regarding Plaintiff's judgment-making ability regarding complex work decisions and his ability to understand, remember, and carry out complex instructions] on the preprinted form [medical source statement] without explanation." Tr. 22. The ALJ further concluded that Dr. King's narrative explanations in support of her opinions were insufficient.

As to both Dr. King's and Dr. Daly's opinions regarding Plaintiff's likely absence from work and being off task, the ALJ concluded that the overall evidence of record, including the treatment records of Plaintiff's treating rheumatologist, Robert Jackson, D.O., and the psychiatric treatment records of Dr. King, reflected that Plaintiff's arthritic related symptoms were controlled with immunosuppressant therapy with only minor flare-ups of joint pain and swelling, and Plaintiff's psychological symptoms were stable with Dr. King's mental health treatment, which included prescription medication. Tr. 22-23.

The ALJ next found that Plaintiff could perform certain sedentary unskilled jobs listed in the Dictionary of Occupational Titles ("DOT") (circuit board screener and semi-conductor bonder), which the VE testified a hypothetical person with Plaintiff's RFC and vocational factors (age, education, work experience) could perform and that were available in significant numbers in the national economy. Accordingly, the ALJ found that Plaintiff was not disabled under the Social Security Act. Plaintiff filed a timely request for review by the Appeals Council of the Social Security Administration, which was denied on June 14, 2017. Plaintiff has thus exhausted all administrative remedies,

and the ALJ's decision stands as the final agency action now under review.

Plaintiff argues that the ALJ erred in formulating Plaintiff's RFC by (1) concluding without foundation that Plaintiff worked on a cattle farm after the alleged disability onset date, based on stray references in the medical records and despite no other evidence that Plaintiff worked on a cattle farm; and (2) failing to properly evaluate the opinion evidence provided by Plaintiff's treating physicians, Dr. Daly and Dr. King, including the opinions that Plaintiff would be off task at least 20% of the work day and would miss more than four days of work per month, which according to the VE, would make Plaintiff unemployable. Plaintiff requests that this case be remanded for further development of the record and consideration by the ALJ.

## **DISCUSSION**

**Standard of Review and Statutory Framework**

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). The court "may not reverse merely because substantial evidence would support a contrary outcome. Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id*. (citations omitted). A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision. If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm

5

the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citations omitted). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. *Id.*

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If not, the Commissioner decides whether the claimant has a severe impairment or combination of impairments.

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments listed in the Commissioner's regulations. If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work. If the claimant cannot perform his past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the

national economy and that is consistent with the claimant's vocational factors – age, education, and work experience. *See, e.g., Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). When a claimant cannot perform the full range of work in a particular category of work (medium, light, and sedentary) listed in the regulations, the ALJ must produce testimony by a VE (or other similar evidence) to meet the step-five burden. *See Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir. 2006).

**Plaintiff's Work After Alleged Onset Date**

As to Plaintiff's first argument, the medical records contain only three references to Plaintiff working in some respect with cattle. These are (1) an April 14, 2013 medical treatment record from Boone Hospital Center, where Plaintiff reported with complaints of high grade fever and shortness of breath, noting that Plaintiff "woke up and helped treat some cows with possible coccidioidomycosis" and that Plaintiff "is a farmer and works on the farm" (Tr. 237); (2) an April 25, 2013 record from Dr. Daly noting the following: "[Plaintiff] is on an immune suppressant; works with cattle" (Tr. 374); and (3) a May 6, 2014 psychiatric diagnostic evaluation record from Dr. King noting as follows: "[Plaintiff] is a 46 y/o male, initial eval for mood sx's; working on his own cattle farm + LOA from seed sales job (6 mo prior to leaving)" (Tr. 656).

Even part-time work after the alleged onset date may be relevant to a claimant's RFC determination. *Toland v. Colvin*, 761 F.3d 931, 936 n.4 (8th Cir. 2014) (citing *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005)). But the record here contains no further information that would support the ALJ's inference that Plaintiff's activities in "work[ing]

his cattle farm" after the alleged disability onset date were inconsistent with Plaintiff's claimed symptoms. For example, there is no information regarding what type of work Plaintiff did or how often he did it. There is also no mention of working with cattle in Plaintiff's application for benefits, and the ALJ did not inquire into such work at the evidentiary hearing.

"[T]he ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017). The ALJ did not sufficiently do so here with respect to this issue. *See, e.g.*, *Ryabov v. Berryhill*, No. 3:16-CV-06001-TLF, 2017 WL 4546382, at *5 (W.D. Wash. Oct. 11, 2017) (holding that the ALJ did not sufficiently develop the record before concluding that a claimant's activities in completing a social services degree were inconsistent with the claimed systems, where the record contained only one reference regarding the degree and there was no information "whether the program was full- or part-time, whether it was in-class or online, how much work it required and of what kind"); *Cukovic v. Colvin*, No. 15 C 2338, 2016 WL 4409192, at *8-9 (N.D. Ill. Aug. 15, 2016) (remanding where "the ALJ never developed the record to flesh out the extent of any work [the claimant] might have performed after the alleged onset date," but nevertheless relied on stray references to such work in the record to reject a treating physician's opinion regarding the claimant's work-precluding symptoms; holding that "in rejecting treater evidence, the ALJ cannot merely indulge assumptions about the nature of [the claimant's] post-onset date work (or school)").

Because the Court cannot determine the extent to which the ALJ relied on the insufficiently supported inference regarding Plaintiff's post-onset work in formulating the RFC, remand is required. Upon remand, the ALJ should further develop the record with respect to nature and extent of any post-onset work before relying on such work in the RFC determination.

**Weight Accorded to Treating Physicians**

Regarding Plaintiff's second argument, the ALJ should upon remand reevaluate the weight accorded to the opinions of Plaintiff's treating physicians. Under the applicable social security regulations,[1] the opinion of a treating physician is "normally entitled to great weight." *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) (citation omitted). "However, the Commissioner may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence," and "[t]he Commissioner may also assign little weight to a treating physician's opinion when it is either internally inconsistent or conclusory." *Id.*

The Court finds problematic that the ALJ discounted Dr. King's opinion because she changed certain responses on her medical source statement. It is too speculative to presume that the changes were made for reasons that would undermine Dr. King's ultimate

---

[1] For claims filed on or after March 27, 2017, the regulations have been amended to eliminate the treating physician rule. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources," but rather, the Administration will consider all medical opinions according to several enumerated factors, the "most important" being supportability and consistency. 20 C.F.R. § 404.1520c.

9

opinion.

A somewhat closer question is presented with respect to the remaining reasons the ALJ gave to discount the treating physicians' opinions. For example, Plaintiff's physical and mental health treatment records at times suggested that Plaintiff's conditions were stable, as the ALJ noted. But at other times, these records suggested that Plaintiff had good and bad days in terms of both physical and mental limitations, and required several adjustments in medications. These portions of the record are consistent with Plaintiff's testimony and with the treating physicians' opinions. *See, e.g.*, *Ross v. Apfel*, 218 F.3d 844, 848-49 (8th Cir. 2000) (holding that where a claimant's pain level varied and he had good days and bad days, variations in treatment notes indicating that a claimant's condition "at certain times is more severe than others" is not a reason to discount a treating physician's opinion regarding disabling pain, and likewise, a claimant's "ability to perform . . . limited [daily] activities (with difficulty) on his good days is not inconsistent with his testimony that on his bad days, he cannot function at all").

Although upon remand, the ALJ may still ultimately conclude that Plaintiff is not disabled, before doing so, the ALJ should reevaluate the existing medical evidence of record and should also determine whether it is appropriate to obtain the opinion of a medical expert on Plaintiff's physical and/or mental condition.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is

**REVERSED and the case is REMANDED** for further proceedings consistent with this Memorandum and Order.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated on this 18th day of May, 2018.